## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**STERLING GERMAINE ROBINSON**      **CIVIL ACTION NO. 3:15-cv-2841**
**aka STERLING GERMANE ROBINSON**
    **LA. DOC #300100**
**VS.**                          **SECTION P**

                                         **JUDGE ROBERT G. JAMES**

**WARDEN, LOUISIANA STATE**
**PENITENTIARY**           **MAG. JUDGE KAREN L. HAYES**

### REPORT AND RECOMMENDATION

      Pro se petitioner Sterling Germaine Robinson, an inmate in the custody of Louisiana's

Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28

U.S.C. §2254 on December 16, 2015. [doc. # 1]. Petitioner attacks his 2011 conviction for armed

robbery and the life sentence imposed thereafter by the Thirty-Seventh Judicial District Court,

Caldwell Parish. This matter has been referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of

the Court.

### Background

      The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On December 22, 2010, the Family Dollar Store in Columbia, Louisiana, was
> robbed by two black males wearing dark clothes and masks. The store manager,
> Wendy Taylor, and an employee, Michelle Dilley, were held at gunpoint. Two
> money bags, a tote bag, and approximately $2,600 were taken during the robbery.[1]
> The robbers placed these items in a "cheap" garbage bag before they fled the
> store. Apparently unbeknownst to the robbers, there was a hole in the garbage bag,
> and rolls of coins and cash began falling out.

---

[1] Of this amount, $1,922 was recovered and returned to the store.

Deputies from the Caldwell Parish Sheriff's Office arrived and began following the money trail inadvertently left by the robbers. A stocking mask and more rolls of coins and cash were found on the trail going through a nearby wooded area. The money trail led to a house on Curry Street. The deputies located more cash in the yard and under the skirting of the house.

In the yard, the officers encountered a black male named Donald Jones and a female companion who were exiting the house. Jones gave them permission to search the house. There was more cash on the living room floor. While clearing the house, they located the defendant on a bed or cot in a bedroom. He was removed from the house while the law enforcement officers continued to search. In the same bedroom, the deputies also found a black plastic garbage bag and the tote bag taken during the robbery. A pair of black jogging pants was found on the bed. When a deputy pulled back the mattress, he discovered another black male, later identified as Gerald Tatum, hiding under the bed. Tatum was immediately taken into custody. Between the mattress and the springs, the officers found two bank bags taken during the robbery, as well as a head wrap worn by one of the robbers and more cash. No weapon was recovered.

The defendant and Tatum were arrested for the armed robbery of the Family Dollar Store.[2] Jones was arrested and charged as an accessory after the fact.

Following a jury trial in October 2011, the defendant was convicted as charged by a vote of 10 to 2. He filed motions for new trial and post verdict judgment of acquittal, both of which were denied by the trial court.

The defendant was subsequently adjudicated a fourth felony offender and given a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence.

*State v. Robinson*, 47,437 (La. App. 2d Cir. 11/14/2012), 106 So.3d 1028.

Petitioner appealed his conviction, adjudication, and sentence to the Second Circuit Court of Appeal arguing three counseled assignments of error – (1) insufficiency of the evidence on the issue of identification; (2) the unconstitutionality of LA. C. CR. P. art. 782 which allows for non-unanimous jury verdict; and (3) excessiveness of sentence. *Id.* Petitioner submitted a

---

[2] Tatum's conviction for armed robbery and sentence were affirmed by this court in *State v. Tatum*, 47,292 (La. App. 2d Cir. 8/15/12), 103 So.3d 550.

supplemental brief arguing three pro se assignments of error concerning alleged defects in the

habitual offender adjudication, namely – (1) the trial court failed to provide written reasons for

judgment; (2) the trial court failed to advise Petitioner of his right to remain silent; and (3) the

trial court failed to specify which of Petitioner's prior convictions were used to enhance his

sentence. *Id.* He also argued that the trial court failed to comply with the provisions of LA. C. CR.

P. art. 894.1 when sentence was imposed. *Id.* at 1036. On November 14, 2012, the Court of

Appeal affirmed Petitioner's conviction, adjudication, and sentence. *Id.* at 1037.

     According to Petitioner he filed an application for writ of certiorari or review in the

Louisiana Supreme Court on December 5, 2012. [doc. # 1-1, p. 3]. On May 17, 2013 Petitioner's

writ application was denied without comment. *State of Louisiana v. Sterling Germane Robinson*,

2012-2658 (La. 5/17/2013), 117 So.3d 918. Petitioner did not seek further direct review in the

United States Supreme Court. [doc. # 1, ¶9(h)].

     On October 24, 2013, Petitioner filed a *pro se* application for post-conviction relief

arguing five claims – (1) the bill of information was defective in that it failed to name a victim;

(2) ineffective assistance of counsel for failing to hire a finger print expert to refute the testimony

of the State's witnesses, and for failing to seek DNA testing of clothing seized at the time of

Petitioner's arrest; (3) prosecutorial misconduct or error when in closing argument prosecutor

gave his personal opinion concerning the evidence; (4) ineffective assistance of counsel for

failing to move for a mistrial when the prosecutor gave his personal opinion concerning the

evidence. [docs. # 1-1, p. 3; # 1-2, Exhibit A, pp. 1-39]. Petitioner also alleged that he was

entitled to DNA testing pursuant to LA. C. CR. P. art. 926.1. *Id.*

     The trial court apparently dismissed Petitioner's application in part because it was in

3

improper form. [doc. # 8-3, p. 314]. Petitioner applied for writs to the Second Circuit Court of Appeal and writs were granted; the Court of Appeal remanded the matter to the District Court to consider the merits of Petitioner's claims. On March 10, 2014, the District Court granted a hearing which was set for April 9, 2014. [doc. # 1-2, Exhibit B, pp. 40-41]. It appears that the evidentiary hearing was held on July 31, 2014; on August 4, 2014 the District Court denied post-conviction relief. *Id.* at 46. On some unspecified date, Petitioner filed a writ application with the Circuit Court challenging the District Court's August 4, 2014, denial of post-conviction application. [doc. # 8, p. 13-14]. Therein Petitioner argued the same claims raised in the application for post-conviction relief. [doc. # 1-2, exhibit C, pp. 42-68]. On November 12, 2014, the Second Circuit denied post-conviction relief ". . . on the showing made . . . ." and mailed Notice of Judgment to Petitioner. *State of Louisiana v. Sterling Germaine Robinson*, 49,727-KH (La. App. 2 Cir. 11/12/2014). [doc. # 1-2, Exhibit D, pp. 69-70].

On December 9, 2014, Petitioner applied for writs in the Louisiana Supreme Court. [doc. # 1-2, Exhibit E, pp. 71-83]. Therein he argued, ". . . the trial court abused its discretion when he incorrectly denied Petitioner Sterling G. Robinson Application for Post-Conviction Relief without the benefit of an evidentiary hearing; under the circumstance in which Petitioner Sterling G. Robinson clearly and specifically alleged facts, which if proven to be true, would have entitled him to constitutional relief." *Id.* at 78. Petitioner apparently did not specifically argue the relative merits of the 5 claims raised in his application for post-conviction relief; although he apparently did provide a copy of the application for post-conviction relief and noted in his writ application, ". . . Petitioner adopts his claims filed in the application for post conviction relief in conjunction with the supervisory writ." *Id.* at 77.

4

On October 9, 2015, the Supreme Court denied his writ application as moot and provided a per curiam which stated in part, "[t]he trial court denied relator's claims after conducting an evidentiary hearing on July 31, 2014." *State of Louisiana ex rel. Sterling Germane Robinson v. State of Louisiana*, 2014-2601 (La. 10/9/2015), 176 So.3d 1029. [*See also* doc. # 12, Exhibit F, p. 84].

Petitioner electronically filed his habeas corpus petition on December 16, 2015. He argues (1) insufficiency of the evidence of identification; (2) unconstitutionality of the statute that permits non-unanimous verdicts; (3) excessive sentence; (4) defective bill of information which failed to allege the name of the victim; (5) ineffective assistance of counsel for failing to hire an expert and perform DNA testing; (6) prosecutor gave his personal opinion in closing argument; (7) ineffective assistance of counsel for failing to object to closing arguments; and (8) petitioner is entitled to DNA testing pursuant to LA. C.CR.P. art. 926.1. [doc. # 1-1, p. 8].

## Law and Analysis

### I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Claims

### A.     Claim One: Insufficient Evidence

Petitioner contends that the evidence at trial was insufficient to find him guilty of armed robbery. [doc. # 1-1, p. 9]. He contends that the State failed to prove his identity, specifically arguing that the State failed to establish his guilt beyond a reasonable doubt as all of the evidence was circumstantial and the State failed to exclude every hypothesis of innocence. *Id.* He further argues that the State did not have a DNA test conducted on a mask and pair of jogging pants. *Id.* at 12.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question is whether the state court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Va.*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Here, the Louisiana appellate court invoked and applied the *Jackson* standard, and it did not do so unreasonably. *See Robinson*, 106 So.3d at 1035. The appellate court referenced the definition of armed robbery. *Id.* at 1033. Specifically, LA. REV. STAT. 14:64 defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

The appellate court then set forth the testimony and evidence presented at trial as follows:

Ms. Dilley, the store employee, testified that two black males wearing masks entered the store. The taller robber was armed and took the manager, Ms. Taylor, into the office to get money from the safe. The shorter robber stayed with Ms. Dilley. The robbers also took money from the registers. Ms. Dilley described the robbers as wearing dark clothing. She said one wore jogging pants; she identified a pair of black

jogging pants recovered from the house on Curry Street as being similar to the ones she saw. Likewise, she identified a mask shown to her as being similar to one used by the robbers, as well as another item she characterized as a "do-rag" worn by one of the robbers to cover his face. Although she initially testified that the robber with her wore gloves, she became uncertain of this during cross-examination.

Ms. Taylor, the store manager, testified that the taller robber shoved a gun in her face and forced her to open the office safe. She gave conflicting statements as to the caliber and size of the gun, but remained steadfast that it was a revolver. She also testified that she knew Donald Jones and that he was not one of the robbers.

The victims identified the two money bags and a tote bag recovered at the Curry Street house as having been taken in the robbery. Ms. Dilley stated that the robbers placed the stolen money in "one of the cheap Dollar Store trash bags"; she described the bags as "flimsy." Both victims identified the black plastic bag found at the house as being similar to the one in which the robbers placed the money.

Four deputies testified about their roles in the investigation of the robbery. Upon his arrival at the store, Deputy Jessie Morris was asked to look around for evidence. He recounted finding cash, rolls of coins and a stocking mask along a trail near the store. Deputy Matthew Schulte testified that while Deputy Morris remained with those items, he and Deputy John Cummings followed the trail littered with cash to the house on Curry Street. There they encountered Jones and a woman as they left the house. They obtained Jones' permission to search the residence. During their search, the deputies found the defendant lying on a bed in a bedroom. He was removed from the house and placed in a patrol unit.

Deputy Blake Wyles testified that he arrived at the house and noticed a hole in the skirting; money was scattered about the ground. He located more money under the house. He then assisted in searching the house. When he lifted the mattress on the bed, the first thing he observed was a money bag on the springs. He then discovered Tatum hiding underneath the bed. Tatum was taken into custody.

Deputy Sedric Meredith, the lead investigator on the case, testified about how the evidence was photographed and collected. He identified the photos showing the money trail from the store to the house and then photos of the house and evidence collected therein. As to the heights of the various suspects, he estimated that the defendant stood about his height, which is 5'9". He also stated that Tatum was taller than him, and that Jones, the man the defense attempted to implicate as a robber, was taller than Tatum.[3] In response to the defense's insinuations that perhaps someone

_____

[3] He agreed that his observations would be consistent with the heights listed in their police records, which were 6'0" for Tatum and 6'4" for Jones.

else left the house unobserved by the officers, Deputy Meredith testified that he did not see any other place to exit the house without going through the living room. While the house had another door, it appeared to him that no one had used it in years.

*Robinson*, 106 So. 3d at 1033-34. Applying the *Jackson* standard, the appellate court held that the evidence in the case was sufficient to support Petitioner's armed robbery conviction. *Id.* The court reasoned:

> In challenging the sufficiency of the evidence in this assignment of error, the defendant contends that the circumstantial evidence presented in this case does not exclude two possible hypotheses of innocence—that the store was robbed by Tatum and Donald Jones, the man who was exiting the house when the deputies arrived, or by Tatum and an unknown black male who was more than six feet in height.

> In making this argument, the defendant refers to the testimony of the two victims, neither of whom could identify the defendant as one of the masked robbers. The victims could state only that the taller robber accompanied Ms. Taylor into the office at gunpoint to get money from the safe while the shorter, unarmed one stayed with Ms. Dilley. Ms. Taylor was asked about her prior testimony at Tatum's trial that she did not think Tatum was as tall or skinny as the taller robber. The defendant argues that since Ms. Taylor could not identify Tatum (who was six feet tall) as the man who robbed her, Tatum must have been the robber with Ms. Dilley. Thus, the defendant reasons that the robber with Ms. Taylor must have been Jones or an unknown black male who was more than six feet tall.

> As to the defendant's contention that Jones was one of the robbers, Ms. Taylor testified that she was positive that he was not. She stated that she had known Jones for eight years, that she was familiar with him, and that she had talked to him several times. She testified that the robber who put a gun to her face spoke to her, and he was not Jones. She further testified that Jones, who she estimated to be more than 6 feet tall, was taller than the robber who stayed with Ms. Dilley. The jury obviously found Ms. Taylor's testimony to be credible.

> As to the heights of the robbers in general, we note that the victims were thoroughly questioned at the defendant's trial as to their observations and their prior statements on the subject. Among the statements upon which Ms. Dilley was cross-examined was her testimony at Tatum's trial that Tatum appeared consistent with the taller robber. At the defendant's trial, Ms. Dilley estimated that the robber next to her was

5'8" or 5'9" while the taller one was perhaps 6'4" or 6'5" in height.[4] (As noted previously, Deputy Meredith testified that the defendant was about 5'9".) The jury, which observed the witnesses and weighed their testimony, could have reasonably concluded from the testimony of the two victims that Jones was not involved in the robbery, that Tatum was the taller robber, and the shorter robber was approximately the same height as the defendant.

The instant case involves a short time span between the robbery and the apprehension of the defendant and Tatum. The sheriff's office was notified of the robbery by Ms. Taylor's husband, who was on the phone with her when the robbers entered the store and heard what was happening. The initial call was received at about 7:40 p.m., and testimony indicated that the first officers would have arrived on the scene within two to three minutes. Deputy Schulte testified that it took him 12 to 15 minutes after receiving the call to arrive at the store. Thereafter, he was one of the officers who followed the money trail to the Curry Street house, which he entered at about 8:20 p.m.

Law enforcement officers followed a trail of money stolen in the robbery to the house where the defendant was discovered lying on a bed. Shortly thereafter, officers discovered his codefendant hiding under the bed. Items associated with the robbery—including cash, money bags and a head wrap—were found concealed between the mattress, upon which the defendant had been lying, and the bed springs. Black jogging pants similar to those worn by one of the robbers were found on the bed. Also discovered on the floor of the room were a black plastic bag similar to the one used by the robbers to carry off the stolen money and a tote bag taken in the robbery.

Based on the testimony of the witnesses and the evidence, when viewed in the light most favorable to the state, we hold that sufficient evidence existed for the jury to conclude that the defendant was one of the two men who robbed the Family Dollar Store. The testimony of one of the robbery victims specifically refuted the defendant's contention that Jones was the man who committed the robbery with Tatum. Based upon the strong circumstantial evidence, which included the money trail, the discovery of the defendant in close proximity to items taken during the robbery and his codefendant's hiding place, and the short period of time in which the events transpired, the jury could have reasonably concluded, to the exclusion of any other reasonable hypothesis of innocence, that the state had successfully negated any reasonable probability of misidentification and that the defendant was one of the participants in the armed robbery.

---

[4] However, the inexactitude of height estimates was demonstrated by Ms. Dilley's guess that defense counsel was 5'2" or 5'3". Defense counsel stated that she was, in fact, 5'6" and wearing 3 1/2–inch heels.

*Id.* at 1034-35.

Here, a review of the state court record shows that the state court's findings were entirely reasonable; thus, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable. Petitioner's claim for relief based on insufficient evidence should be **DENIED**.

**B.**    **Claim Two: Non-Unanimous Verdict Unconstitutional**

Next Petitioner argues that the trial court's jury instruction allowing a guilty verdict by less than unanimous vote violated his due process rights. [doc. # 1-1, p. 13]. Petitioner complains that he received a verdict of 10 votes for guilty and 2 votes for not guilty rather than an unanimous vote by a jury of 12. *Id.*

In Louisiana, "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." LA. C. CR. P. art. 782. Armed robbery is a crime punishable under state law by hard labor. LA. REV. STAT. 14:64. In addition, the U.S. Supreme Court has long held that the Sixth Amendment, as applicable to the states through the Fourteenth Amendment, does not require jury unanimity for state criminal trials. *Apodaca v. Oregon*, 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972). *See also*, *Johnson v. Louisiana*, 406 U.S. 356, 92 S. Ct. 1620, 32 L. Ed.2d 152 (1972) (holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials); *Diver v. Warden*, 2010 WL 4291330 (W.D. La., Aug. 17, 2010) (applying *Apodaca* and denying state habeas petitioner's claim that the Sixth Amendment was violated when he was convicted of second degree murder by a non-unanimous jury.)

In the case at bar, the state trial judge specifically instructed the jurors that to return a

legal verdict on the armed robbery charge, the 12–member jury would have to have 10 members concur. [doc. # 8-1, p. 90]. The jury subsequently returned a legal jury verdict of 10 finding Robinson guilty of armed robbery and 2 finding him not guilty. [doc. # 8-3, p. 51]. This court finds that the state court's denial of petitioner's challenge to the lack of unanimity in the jury that convicted him to be in accord with U.S. Supreme Court precedent. Accordingly, no relief is warranted on this claim.

**C.**    **Claim Three: Non-Unanimous Verdict Unconstitutional**

Next, Petitioner claims that the sentence imposed following his adjudication as a fourth felony offender–mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence for armed robbery–was excessive, in violation of the Eighth Amendment. [doc. # 1-1, p. 14]. Defense counsel argues that since the defendant was 30 years old and had a history of only nonviolent drug offenses, that sentence was excessive and served no purpose other than needless imposition of pain and suffering. *Id.* at 15. On direct appeal, the Louisiana Second Circuit Court of Appeal rejected that claim, holding:

> Mandatory life sentences required by the habitual offender laws are presumptively constitutional and should be accorded great deference by the judiciary. *State v. White*, *supra.*; *State v. Wallace*, *supra.*
>
> In *State v. Dorthey*, 623 So.2d 1276 (La. 1993), and *State v. Johnson*, 97–1906 (La. 3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case.
>
> Furthermore, a trial judge may not rely solely upon the nonviolent nature of the

instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the main reason for declaring such a sentence excessive. *State v. White, supra*.

The defendant has failed to rebut the presumption that the mandatory sentence is constitutional. He has not proven that he is "exceptional" such that the mandated sentence is too harsh.

*Robinson*, 106 So. 3d at 1033-37.

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal habeas corpus relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. In *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (*citing Rummel v. Estelle*, 445 U.S. 263, 274–76, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that

successful challenges to the proportionality of punishments should be exceedingly rare." *Id.*

(quotation marks omitted).

Interpreting *Solem* in light of intervening precedent, the United States Fifth Circuit Court

of Appeals has set forth the framework to be used when analyzing a claim that a sentence is

excessive:

> [W]e will initially make a threshold comparison of the gravity of [Petitioner's]
> offenses against the severity of his sentence. Only if we infer that the sentence is
> grossly disproportionate to the offense will we then . . . compare the sentence
> received to (1) sentences for similar crimes in the same jurisdiction and (2)
> sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when evaluating the

excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful

that the "sentence is imposed to reflect the seriousness of [Petitioner's] most recent offense, not

as it stands alone, but in the light of his prior offenses." *Id.*

The Fifth Circuit has noted that *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L.

Ed. 2d 382 (1980), "establishes a benchmark for disproportionate punishment under the Eighth

Amendment." *Gonzales*, 121 F.3d at 943. In *Rummel*, the Supreme Court upheld a petitioner's

sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was

imposed under a Texas recidivist statute and took into account petitioner's prior convictions for

fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly
> disproportionate punishments is an inherently subjective judgment, defying bright
> lines and neutral principles of law. Nevertheless, we can say with certainty that
> the life sentence approved in *Rummel* falls on the constitutional side of the line,
> thereby providing a litmus test for claims of disproportionate punishment in
> violation of the Eighth Amendment.

*Gonzales*, 121 F.3d at 943 (footnote omitted).

In this case, petitioner's predicate convictions were for possession of cocaine, for distribution of cocaine, and for possession of methamphetamine with intent to distribute. In light of those facts, and considering the *Rummel* finding that a life sentence was not excessive when imposed for a nonviolent offense where the habitual offender had two prior nonviolent offenses, all of which were relatively minor offenses, this Court has no hesitation in concluding that petitioner's life sentence as a fourth offender under these circumstances, which are considerably more grave, was not grossly disproportionate. Given that the sentence is not grossly disproportionate, this Court's "inquiry is finished." *Gonzales*, 121 F.3d at 942. Because petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail.

**D.     Claim Four: Erroneously Charged with Robbing Family Dollar Store**

Next petitioner claims that he was denied his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution due to a technical deficiency in his armed robbery Bill of Information. [doc. # 1-1, p. 16]. Petitioner contends that the Bill of Information inappropriately alleged that he took property from a place of business rather than a person. *Id.* Petitioner's Bill of Information states in relevant part:

> On or about 12/22/2010, in Parish of Caldwell, STERLING GERMANE ROBINSON comitted the offense of R.S. 14:64 ARMED ROBBERY, by the intentional taking of property having value from the person of another or which is in the immediate control of another, namely FAMILY DOLLAR STORE, by use of force or intimidation while armed with a dangerous weapon, to wit: 22 PISTOL.

[doc. # 8-1, p. 16].

15

The Court finds that the petitioner's claim regarding the sufficiency of the Bill of Information is without merit. The law is well-settled that a state indictment or bill of information is not a matter for federal habeas corpus relief unless the charging document was so defective that the convicting court had no jurisdiction and that, under no circumstances, could a valid state conviction result from the facts provable thereunder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Such a determination is made by looking to the law of the state where the bill of information was issued. *Id.* In this regard, the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." LA. CODE CRIM. P. art. 464. In identifying the victim when an offense is committed against a person, the indictment "shall state the true name of the victim," but if the name is not known, "may describe him as far as possible." LA. CODE CRIM. P. art. 473. The Official Comments to this article note that a primary concern in identifying a victim is "protection of the defendant's constitutional right to be informed of the nature and cause of the accusation against him, . . . adequate to support a plea of double jeopardy." In addition, the Comments note that this article "stresses 'identification,' rather than a mere naming of the victim," and a bill of particulars may be requested by either the defendant or by the trial court so as to provide "more specifically the nature and cause of the charge." LA. CODE CRIM. P. art. 484.

In the instant case, the Bill of Information made reference to the date and place of the charged offense and the statutes that the petitioner was charged with having violated. Although the charging document described the victim as being "Family Dollar" instead of a person, the petitioner was adequately informed of the nature and cause of the accusation against him. Petitioner stated that his attorney informed him the names of the victims of the robbery, Wendy

16

Taylor and Michelle Dilley. [doc. # 8-3, p. 159-60]. Additionally, Wendy Taylor and Michelle Dilley both testified for the prosecution as victims of the robbery. [doc. # 8-2, p. 116 & p. 139].

Accordingly, there was no lack of notice as to the identity of the alleged victims and no jurisdictional deficiency in the Bill of Information. *See, e.g., State v. James*, 305 So.2d 514, 518 (La. 1974) (upholding a conviction based upon an indictment for robbery where the indictment identified the victim to be a commercial establishment rather than a person); *State v. Brown*, 71 So.3d 1069, 1075 (La. App. 5th Cir. 2011) (same); *State v. Darville*, 573 So.2d 1155, 1157 (La. App. 5th Cir. 1991) (same); *State v. Cross*, 461 So.2d 1246, 1249 (La. App. 1st Cir. 1984) (same). Further, any challenge to the Bill of Information by the petitioner's attorney would have resulted, at most, in an amendment to the charging document so as to cure the noted deficiency, thereby achieving, if anything, a mere delay in the trial and resulting in no prejudice in fact to the petitioner. *See State v. James*, 305 So.2d at 518 (noting that an objection prior to trial or at trial could have secured an amendment to the charging document). Petitioner's claim for relief on these grounds should be **DENIED**.

**E.     Claim Six: Prosecutorial Misconduct**

Petitioner claims that he was denied due process of the law due to the prosecutor's improper comments during closing argument. [doc. # 1-1, p. 22]. Petitioner takes issue with two different comments made by the prosecutor. *Id.* at 23-24.

"When a *habeas* petitioner alleges a generic due process violation based on improper prosecutorial comments, a reviewing court must determine whether the remarks, 'in the context of the entire trial, were sufficiently prejudicial to violate [the petitioner's] due process rights.'" *Mosby v. Cain*, 2012 WL 6651920, at *8 (M.D. La. Nov. 26, 2012) (citing *Donnelly v.*

17

*DeChristoforo*, 416 U.S. 637, 639 (1974)). The remarks must be more than simply "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A petitioner may obtain relief only if "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citing *Donnelly*, 416 U.S. at 694). "The prosecutor's remarks do not present a claim of constitutional significance unless they were so prejudicial that [the petitioner's] state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment." *Rushing v. Butler*, 868 F.2d 800, 807 (5th Cir. 1989) (citing *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985)). A trial is fundamentally unfair only if the prosecutor's remarks evince either persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the petitioner would not have been convicted. *Id.* When attacked, the prosecutor's remarks are not considered in isolation, they are considered in the context of the entire trial, including the prosecutor's closing argument. *Id.*

Courts apply a two-step analysis to claims of prosecutorial misconduct. *U.S. v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004). In the first step, courts must assess whether the prosecutor's comments were improper. *Id.* If the comments were improper, courts must then ask whether the comments prejudiced the petitioner. *Id.* The prejudice inquiry sets a high bar:

> Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected. A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.

*U.S. v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005) (internal citations omitted). Further, courts look to three factors in deciding whether any misconduct casts serious doubt on the verdict: "(1)

the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *U.S. v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005).

 i. <u>The Prosecutor's First Remark</u>

 First, Petitioner argues that the prosecutor improperly bolstered the credibility of a testifying witness. [doc. # 1-1, p. 23]. During closing argument, the prosecutor stated the following with regard to witnesses Wendy Taylor and Michelle Dilley: "those ladies told the truth both times," and "they are credible witnesses, they didn't try to embellish it." [docs. # 1-1, p. 23-24; # 8-3, p. 6-7].

 To begin with, the prosecutor's comments about the credibility of the witness were arguably improper. *See U.S. v. Young*, 470 U.S. 1, 18-19 (1985) (stating that when a prosecutor vouches for the credibility of a witness, his opinion "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather that its own view of the evidence."); *U.S. v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008) ("A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses."). However, even supposing that the comments were indeed constitutionally improper, this Court cannot say that, in the context of the entire trial, the comments cast serious doubt on the correctness of jury's verdict. Although there were no cautionary instructions given,[2] the comments were not inherently prejudicial. Moreover, any

---

[2] There were no cautionary instructions given immediately after the comment. However, the court's jury instructions did include the cautionary instruction: "As jurors, you, alone shall determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and of the weight their testimony deserves, you should carefully scrutinize the testimony given and the circumstances under which the witness has testified." [doc. # 8-3, p. 44]. In addition, the judge cautioned, "the opening statements and closing arguments are not to be

potential prejudicial effect was, without doubt, mitigated by the overwhelming evidence of Petitioner's guilt presented at trial. In other words, the reliability of these two witnesses was not solely determinative of Petitioner's guilt. The Court cannot say that, in all probability, but for the remarks Petitioner would not have been convicted. Petitioner's claim should be **DENIED**.

ii. The Prosecutor's Second Remark

Petitioner next takes issue with the prosecutor's comments that there was no DNA evidence on the skull cap. [doc. # 1-1, p. 23]. Petitioner also argues that the prosecutor misstated evidence concerning fingerprints, stating that there were "no prints." *Id.* at 24.

The Louisiana Code of Criminal Procedure provides: "[t]he state's rebuttal shall be confined to answering the argument of the defendant." LA. C. CR. P. art. 774. In other words, "the State has the right to answer the argument of the defendant." *State v. Thomas*, 572 So. 2d 681, 684 (La. App. 1 Cir. 1990). Here, it is clear that the prosecutor did not commit any misconduct. The prosecutor's remarks were made in response to the defense's arguments concerning the collection of evidence.

Deputy Meredith testified why he failed to collect fingerprints at the scene and during cross examination Petitioner's attorney asked several questions concerning the collection of fingerprints. [doc. # 8-2, p. 197-208]. Further Petitioner's counsel made several arguments during closing statements concerning the lack of fingerprint evidence. [doc. # 8-3, p. 29-31]. The prosecutor's statements, in the proper context, refer to the fact that there were no fingerprints to analyze, not that the crime scene and evidence was devoid of any fingerprints. *Id.* at 11. The prosecutor's statements concerning fingerprints can be construed as nothing more than a rebuttal

considered evidence." *Id.* at 45.

20

to defense counsel's arguments.

Petitioner takes issue with the prosecutor's statement that "there's no DNA. What are you going to do?" [doc. #8-3, p. 13]. Again, observing the context in which the statement was made, it is clear that the prosecutor was referring to a hypothetical argument the defense might make if the lab wouldn't have found any DNA in the skull cap. *Id.* at 13-14. The prosecutor did not infer that there was no DNA evidence to be collected. *Id.* Additionally defense counsel made several arguments about the failure to collect any DNA evidence, thus defense counsel was merely making a rebuttal argument. These claims are without merit and should be **DENIED**.

**F.     Claim Five & Seven: Ineffective Assistance of Counsel**

Petitioner's fifth claim is for ineffective assistance of counsel stemming from his counsel's failure to 1) file for funds to hire a fingerprint expert and 2) file to have DNA testing performed on the clothes found. [doc. # 1-1, p. 19]. Petitioner's seventh claim is for ineffective assistance of counsel due to counsel's failure to object to the prosecutor's improper closing statements *Id.* at 28.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.

*Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n. 6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042–43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689–90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz–Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

i. Petitioner's Fifth Claim

Petitioner contends that his trial counsel should have filed for funding to hire a fingerprint

expert and filed a motion to have a DNA test performed on clothing found. [doc. # 1-1, p. 19].

Claims of uncalled witnesses are not favored in federal habeas corpus review because the

presentation of testimonial evidence is a matter of trial strategy and because allegations of the

content of a prospective witness's testimony are largely speculative. *Sayre v. Anderson*, 238 F.3d

631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)).

To demonstrate ineffective assistance, a petitioner must name the witness, demonstrate that the

witness was available to testify and would have testified, set out the content of the proposed

testimony,[22] and show that the testimony would have been favorable to a particular defense. *See*

*Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390

(5th Cir. 1981). Here, Petitioner fails to identify a particular fingerprinting expert that counsel

should have discovered or called.  By extension, Petitioner fails to show that an expert would

have actually testified in his favor.

Petitioner's next claim, that counsel's failure to have a DNA test performed on the

clothes found violated his rights, is likewise without merit. On July 31, 2014, during the post-

conviction hearing, Petitioner's trial attorney explained that she did not request funds to hire a

fingerprinting expert and did not have a DNA test performed because she did not want to hand

the prosecution direct evidence that may have convicted Petitioner. [doc. # 8-3, p. 174-76].

---

[22] "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Instead, trial counsel refrained from requesting these trial strategies due to the circumstantial nature of the State's case. *Id.* Further, Petitioner's trial attorney felt a DNA test on the clothes would be futile, "all of the items that they recovered from the residence was all put in one package. *Id.* at 175.

It is well settled that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* It is the petitioner who must overcome the presumption that defense counsel's performance fell within the broad range of reasonable professional assistance. *Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003).

The trial strategy that defense counsel employed regarding whether to seek DNA analysis and finger print analysis could very well have been a calculated trial tactic designed to allow as much reasonable doubt to remain in Petitioner's favor. The State provided no DNA or fingerprint evidence to prove positively and beyond all doubt that the evidence collected was devoid of Petitioner's fingerprints or DNA. Defense counsel was aware that the State failed to perform any DNA analysis on the clothes collected. This left the door open for the defense to argue that there was reasonable doubt. Similar reasoning holds true concerning the fingerprints. Had a positive print belonging to Petitioner been found on the bag, such a positive finding would have

eliminated all shadow of doubt as to if Petitioner came into contact with the bag collected from the crime scene during the robbery. The decision to not seek DNA analysis and fingerprint analysis could have been Petitioner's attorney's trial strategy, raising doubt as to why the State failed to seek such analysis.

Petitioner has failed to overcome the presumption that his counsel's performance fell within the broad range of reasonable professional assistance; therefore, it is recommended that this Court decline to grant habeas relief based on Petitioner's fifth claim.

ii. Petitioner's Seventh Claim

Petitioner claims that counsel rendered ineffective assistance by failing to object when the prosecutor made certain remarks during closing arguments. [doc. # 1-1, p. 28]. Petitioner argues that "the prosecutor gave his personal opinion on the reliability of forensic tests and lack thereof, and vouched for the credibility and truthfulness of the State's witnesses." *Id.*

Petitioner contends that counsel failed to object to the prosecutor's personal opinion on forensic tests as set forth above in Section II.E.ii. *Id.* Counsel is not required to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citation omitted). Here, counsel did not render ineffective assistance in choosing not to object because, for the reasons explained in Section II.E.ii., any objection to the alleged errors would have been futile. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a frivolous issue).

Petitioner next claims that counsel's failure to object to prosecutor's statements on witnesses credibility. It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. *Drew v. Collins*, 964 F.2d 411, 423

(5th Cir. 1992). Furthermore, even if counsel's failure to object could be considered deficient performance, Petitioner clearly has not shown the prejudice required to support his claim, as required by *Strickland*. For the reasons discussed in Section II.E.i., the outcome of the proceeding would not have been different as a result of counsel objecting to the statements made during the State's closing arguments.

As explained above, the jurors were properly instructed that they were not to consider the prosecutor's arguments as evidence and that the jurors alone are the "sole judges of the credibility of witnesses." [doc. # 8-3, p. 44-45]. The alleged improper statements made by the prosecutor, when weighed against all of the other compelling, corroborating, and incriminating evidence that was presented to the jury, did not have a substantial and injurious effect or influence in determining the jury's verdict. Petitioner had to show that, but for counsel's error, the result of the trial would have been different. For the reasons discussed, Petitioner cannot make this showing. Accordingly, Petitioner is not entitled to relief on these claims.

## G.     Claim Eight: Ineffective Assistance of Counsel

Williams final claim before this court is that he was denied his right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, when he was denied the right to post-conviction DNA testing under LA. C. CR. P. art. 926.1.

First and foremost, insofar as Petitioner challenges the correctness of the state court's application of the state rules governing DNA testing before this court, it has been uniformly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). A federal court conducting habeas review is limited to determining whether a petitioner's

26

custody is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §

2254(a); *Estelle*, 502 U . S. at 68; *Engle v. Isaac*, 456 U.S. 107, 119, 102 S. Ct. 1558, 71 L. Ed.

2d 783 (1982); *see also Hansbro v. Cain*, 2006 WL 3488729, at *7 (W.D. La. Oct.20, 2006)

(Hornsby, M.J.) ("This court is not concerned with whether the state courts properly applied

Article 926.1 because federal habeas relief does not lie for errors of state law.") (adopted by

Stagg, J., on Dec. 1, 2006), *certificate of appealability denied*, No. 07–30007 (5th Cir. May 9,

2008). Accordingly, this court cannot review the correctness of the state court's determination

regarding the application of La. C. Cr. P. art. 926.1 to petitioner's request for DNA testing.

Also, to the extent Petitioner argues that the Constitution demands that he be granted

additional post-conviction DNA testing, such a claim has been foreclosed by the U.S. Supreme

Court's decision in *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52,

129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009). In that case, the Supreme Court held that there was no

free-standing federal constitutional right to obtain post-conviction access to the state's evidence

for DNA testing. *Id.* at 72; *see also, McElhaney v. McKee*, 2007 WL 851664 at *1 (W.D. Mich.

Mar.16, 2007); *Penley v. Director*, 2006 WL 2504902 at *6 (E.D. Tex. July 11, 2006) (Bush,

M.J.), adopted, 2006 WL 2505174 (E.D. Tex. Aug.28, 2006) (Schell, J.); *Lang v. Dretke*, 2005

WL 2219234 at *2 n. 2 (N.D. Tex. Sept.8, 2005) (Sanderson, M.J.) (adopted on Sept. 29, 2005,

by Lindsay, J.); *Figueroa v. Dretke*, 2005 WL 1108109 at *1 (N.D. Tex. May 5, 2005) (Bleil,

M.J.), adopted, 2005 WL 1320143 (N.D. Tex. June 1, 2005) (Means, J.); *Shenouda v. Breslin*,

2004 WL 1918805 at *6 (E.D. N.Y. Aug. 27, 2004).

Moreover, Petitioner cannot show that additional DNA testing would vindicate him and

establish that he is innocent. There was never testimony elicited at trial that directly linked

Petitioner with the clothing he wishes to have DNA tested. Thus, if additional DNA testing was conducted, the lack of DNA able to be linked to Petitioner would not undermine the jury's conclusion. Additionally, as noted during his post-conviction hearing, the evidence at issue has been used and handled by two different sets of juries and even possibly Petitioner himself. Petitioner would, of course, only be further implicated if additional DNA testing yielded DNA that came from him and not necessarily vindicated if it came from a third party.

Thus, additional post-conviction DNA testing would be futile and any results from such testing would not have altered the outcome of Petitioner's trial. As the Court stated in *Osborne*, "DNA testing alone does not always resolve a case. Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent." *Osborne*, 557 U.S. at 62. Therefore, the Court finds that Petitioner is not entitled to *habeas* relief on these claims.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Sterling Germaine Robinson, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.

Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 29th day of April, 2016.

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**